IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RANCHO LOBO, LTD.,
a Texas limited partnership,

       Plaintiff,

vs.                                    Civ. No. 00-925 JP/DJS

ANTONIO DEVARGAS, PATRICIO
ANTONIO, GILBERT CHAVEZ, MOISES
MORALES, ALFREDO MONTOYA, NELSON
CORDOVA, in their Individual and Official
capacities, and THE BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY OF
RIO ARRIBA,

       Defendants.

MEMORANDUM OPINION AND ORDER

On November 2, 2000, the Plaintiff filed a Motion for Summary Judgment on the

Validity of the Timber Ordinance (Doc. No. 29).  On November 17, 2000, the Defendants filed a

Cross Motion for Summary Judgement on the Validity of the Timber Harvest Ordinance (Doc.

No. 31).  Having reviewed the briefs and relevant law, I find that Plaintiff's motion for summary

judgment should be granted and the Defendants' motion for summary judgment should be denied.

A.  Background

On February 11, 2000, the Plaintiff applied for and received a commercial timber harvest

permit from the Forestry Division of the New Mexico Energy, Minerals and Natural Resources

Department.  The Plaintiff planned the timber harvest to minimize the fire hazard presented by an

overgrown forest and to maximize the habitat for the natural vegetation, elk, deer, and bear.  On

March 6, 2000, Defendant DeVargas, an assistant planner and the timber harvesting officer for the

Rio Arriba County Planning and Zoning Department, notified the Plaintiff that it must apply for and receive a timber harvest permit from Rio Arriba County (County) in order to proceed with the timber harvest.  The Plaintiff refused to apply for a County timber harvest permit and filed this lawsuit.

The Plaintiff's complaint alleges that the Rio Arriba County Timber Harvest Ordinance (County Ordinance) violates due process, constitutes an unconstitutional taking, and deprives the Plaintiff of its contractual rights, all in violation of the Fifth and Fourteenth Amendments of the United States Constitution and the New Mexico Constitution.  The complaint also alleges that the County Ordinance is invalid because state law preempts the County Ordinance.  The Plaintiff asks the Court in its complaint to declare the County Ordinance invalid and enter a permanent injunction prohibiting the County from enforcing the County Ordinance.  The Plaintiff further asks for an award of compensatory and exemplary damages.

The Plaintiff in its motion for summary judgment requests that the Court find as a matter of law that the County Ordinance is invalid.  In the alternative, the Plaintiff asks the Court to certify the issue of the validity of the County Ordinance to the New Mexico Supreme Court for resolution.  The Defendants in their motion for summary judgment request that the Court uphold the County Ordinance.

B.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First*

*Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial

burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with

evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin*

*Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a

reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212

(10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by

resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939

F.2d at 891.

C. Discussion

    Before addressing the merits of the motions for summary judgment, I will address the

issue of whether it is appropriate to certify the question of the validity of the County Ordinance to

the New Mexico Supreme Court.  Under Rule 12-607, NMRA 1998 and NMSA 1978, §39-7-4

(1997), certification of a question to the New Mexico Supreme Court is appropriate if there are

no controlling New Mexico appellate decisions, statutes, or constitutional provisions concerning

the question.  I believe that there is sufficient controlling New Mexico law to allow me to decide

the validity question without resorting to mere speculation on how New Mexico courts would

decide the question.  I, therefore, find that certification of the validity question to the New Mexico

Supreme Court is unnecessary.

    The substantive issues raised in the motions for summary judgment are as follows:

whether the County Ordinance and its permit procedure conflict with state law; whether the

County Ordinance is preempted expressly or impliedly by state law; whether the County

3

Ordinance is an authorized zoning ordinance; and whether the County validly exercised its general welfare powers in enacting the County Ordinance.[1]

1.  Whether the County Ordinance and its permit procedure conflict with state law.

The Plaintiff argues that the County Ordinance's greater restrictions on clear cutting and extensive permit process conflict with the New Mexico Forest Conservation Act (State Act), NMSA 1978, §§68-2-1 to 68-2-25.  The Plaintiff contends that the State Act governs as a matter of law in that situation.  In New Mexico, an ordinance is presumed to be valid and the person attacking the ordinance has the burden of showing that the ordinance is invalid.  *See, e.g., City of Albuquerque v. Jackson*, 101 N.M. 457, 459, 684 P.2d 543, 545 (Ct. App. 1984).  When an ordinance and a statute conflict, the law of the sovereign controls.  *Causse v. City of Gallup*, 106 N.M. 571, 573, 746 P.2d 1103, 1105 (1987).  However, "an ordinance is not necessarily invalid simply because it provides for greater restrictions than state law.  Rather, the tests are whether the stricter requirements of the ordinance conflict with state law, and whether the ordinance permits an act the general law prohibits, or prohibits an act the general law permits."  *Incorporated County of Los Alamos v. Montoya*, 108 N.M. 361, 365, 772 P.2d 891, 895 (Ct. App.), *cert. denied*, 108 N.M. 273, 771 P.2d 981 (1989).

Article VI (C)(1) of the County Ordinance prohibits clear cutting unless a variance is obtained.  Moreover, Art. VI (C)(3) of the County Ordinance describes the residual stand of trees that must be left after a timber harvest.  The State Act, on the other hand, says that nothing in the

---

[1]The Plaintiff asks the Court not to consider Exhibit 3 to Defendant Rio Arriba's Reply in Support of its Motion for Summary Judgment on the Validity of the Timber Harvest Ordinance (Doc. No. 38).  Since I have already stricken that exhibit, it will not be considered.  *See* Order (Doc. No. 42), filed Jan. 29, 2001.

State Act "shall prevent a landowner hereafter from converting forest vegetative types to nonforest vegetative types for such purposes as range, wildlife habitat, farming, surface mining or subdivision development; provided, however, any slash resulting from such conversion shall be treated in a manner that will minimize the spread of forest fires and the possibility of insect epidemic." In other words, the State Act allows clear cutting while the County Ordinance prohibits clear cutting if a variance is not obtained. I, therefore, find that the undisputed facts show that the County Ordinance's clear cutting provisions conflict with the State Act's allowance of clear cutting.

To obtain a timber harvest permit under the County Ordinance, the County Ordinance requires a pre-application conference; a Timber Harvest Plan prepared by a professional forester or qualified timber operator; erosion control and regeneration plans prepared in compliance with the Water Quality Protection Guidelines for Forestry Operations in New Mexico; riparian buffer zones; terrain management and erosion control measures; well-designed roads and drainage systems in compliance with the Water Quality Protection Guidelines for Forestry Operations in New Mexico; no timber harvests on slopes of 40 percent or more, or in unstable soils unless a variance is granted; a fire protection plan; protection of archeological, historic and cultural resources; abatement of noise, dust, smoke, and traffic; consideration of compatibility with adjacent land uses; possible preparation of an Environmental Assessment if the timber harvest has significant effects on the environment, public and private property and infrastructure, and the public health, safety, and welfare; and public meetings. *See* Art. VI of County Ordinance. The regulations promulgated under the State Act require that a timber harvest permit applicant prepare a forest regeneration plan, prepare a plan for the method of harvest and treatment of skid

trails and slash on excessive slopes, and provide for water bars and reseeding.  19 NMAC 20.2.8;
20.2.10.  The County Ordinance's permitting process clearly has more extensive requirements to
acquire a timber harvest permit than the regulations promulgated under the State Act require.
Hence, the undisputed facts indicate that the County Ordinance's permitting process conflicts with
the State Act's permitting process.  In sum, as a matter of law, the State Act's clear cutting
provision and relatively simple permitting process conflict with and govern over the County
Ordinance's general prohibition against clear cutting and its complex permitting process.

    2.   Preemption of the County Ordinance by the State Act.

    The Plaintiff also argues that the County Ordinance is invalid because the State Act
expressly or impliedly preempts the County Ordinance.  A county's ability to regulate in an area
may be preempted expressly by the language of a statute.  *San Pedro Mining Corp. v. Board of
County Commissioners of Santa Fe County*, 1996-NMCA-002 ¶9, 121 N.M. 194, *cert. denied*,
Table No. 23,364 (1996).  "A local government is presumed to retain the power to exercise its
normal authority over an activity, so the intention of the legislature to preempt local control must
be clearly stated if express preemption is to result."  *Id*.  That clear legislative intention "to
preempt a governmental area should be sufficient without necessarily stating that affected [local
governmental entity] must comply and cannot operate to the contrary."  *Casuse*, 106 N.M. at
573, 746 P.2d at 1105 (citation omitted).

    Here, the State Act states that the Forestry Division "is authorized to make and enforce
rules and regulations not in conflict with any now in force as it deems necessary for the ...
application of commercial forest practices within the state."  NMSA 1978, §68-2-16 (1959).  The
Forestry Division is likewise "authorized to enforce <u>all</u> laws, rules and regulations relating to <u>all</u>

forested, cutover or brush lands lying within the state under the following circumstances: ... B. logging and timber operations and practices... [and] D. conservation of commercial forest lands and products."  NMSA 1978, §68-2-14 (1959)(emphasis added). Furthermore, "the forestry division shall enforce and administer <u>all</u> laws and regulations relating to forestry on lands within the state...."  NMSA 1978, §9-5A-4 (C) (1987)(emphasis added). In addition, "[t]he state shall have the responsibility for prevention and suppression of forest fires on <u>all</u> nonfederal, nonmunicipal lands in the state."  NMSA 1978, §68-2-8 (1967) (emphasis added).  The statutory language clearly indicates the legislature's intent to expressly preempt local governmental entities from regulating timber harvests.  Accordingly, as a matter of law, the County Ordinance is invalid on that basis. Having found express preemption, there is no reason for me to analyze the implied preemption argument.

     3.  Use of the County's Authority to Zone

     The Plaintiff further argues that the County Ordinance is not authorized under the County's power to enact zoning ordinances.  The Plaintiff complains that the County Ordinance does not provide for special districts as required by NMSA 1978, §3-21-1(B) (1965).  "Zoning is defined as 'governmental regulation of the uses of land and buildings according to districts or zones.'"  *Miller v. City of Albuquerque,* 89 N.M. 503, 505, 554 P.2d 665, 667 (1976)(citation omitted). Contrary to the Plaintiff's contention that there must be special zoning districts in order to establish a zoning ordinance, a district or zone can be county-wide as in this case.  *See Board of County Commissioners of San Miguel County v. City of Las Vegas*, 95 N.M. 387, 389, 622 P.2d 695, 697 (1980).

The Plaintiff asserts next that the County Ordinance's provision for an Environmental Assessment is discretionary in nature and so cannot be uniformly applied to timber harvest permit applicants as required by NMSA 1978, §3-21-1(B). *City of Santa Fe v. Gamble-Skogmo, Inc.*, 73 N.M.410, 417, 389 P.2d 13,18 (1964)(citations omitted) stated that:

> It is settled that a legislative body may not vest unbridled or arbitrary power in an administrative agency but must furnish a reasonably adequate standard to guide it. Standards required to support a delegation of power by the local legislative body need not be specific. Most decisions hold that broad general standards are permissible "so long as they are capable of a reasonable application and are sufficient to limit and define the Board's discretionary powers."

The County Ordinance states that "[t]he Planning and Zoning Department <u>may</u> order an applicant to prepare an Environmental Assessment pursuant to this ordinance upon  a finding that the proposed and existing harvests, when assessed together, would have significant effects on the environment, public and private property and infrastructure, and the public health, safety and welfare."  Art. VI (C)(11)(c) (emphasis added). This provision gives the Planning and Zoning Department unlimited power to decide which persons will be ordered to prepare an Environmental Assessment.  The Environmental Assessment provision was, therefore, not properly promulgated under the County's zoning authority.

The Plaintiff also complains that the social considerations found in the County Ordinance are outside the scope of the zoning authority granted by NMSA 1978, §3-21-1(A) (1965). "To be within the authorized purposes the zoning ordinance must bear some reasonable relationship to the general welfare." *Gamble-Skogmo, Inc.*, 73 N.M. at 413, 389 P.2d at 15.  "'The concept of the public welfare is broad and inclusive.  The values it represents are spiritual as well as physical, aesthetic as well as monetary.  It is within the power of the legislature to determine that the

community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled.'" *Temple Baptist Church, Inc. v. City of Albuquerque*, 98 N.M. 138, 143-44, 646 P.2d 565, 560-61 (1982)(quoting *Berman v. Parker*, 348 U.S. 26, 33 (1954)).  The Plaintiff argues that the County Ordinance's purpose "to preserve local customs, culture and traditions" is not within the scope of the County's zoning authority.  *See* Art. II of the County Ordinance. The Plaintiff, however, has not presented any evidence which would create a question of material fact concerning whether the County Ordinance's purposes are not reasonably related to the general welfare.  I, therefore, find that the preservation of "local customs, culture and traditions" is reasonably related to the general welfare.

> 4.  Whether the County validly exercised its general welfare powers in enacting the County Ordinance.

Finally, the Plaintiff argues that the County did not validly exercise its general welfare powers in enacting the County Ordinance.  NMSA 1978, §4-37-1 (1975) grants counties general welfare or police powers.  In order to enact a valid ordinance under the general welfare or police powers, the ordinance must be "'reasonably necessary to preserve the public health, safety, morals or general welfare.'" *City of Hobbs v. Biswell*, 81 N.M. 778, 780, 473 P.2d 917, 919, *cert. denied*, 81 N.M. 772, 473 P.2d 911 (1970)(citation omitted). Section 4-37-1 also states that counties can only discharge those powers if doing so is "not inconsistent with statutory or constitutional limitations placed on counties."   In this case, there is a question of fact as to whether the silvicultural principles and methodologies set forth in the County Ordinance are sound and would actually benefit the environmental health of the County's forested lands. Notwithstanding this question of fact, as discussed *supra*, portions of the County Ordinance are

9

inconsistent with the State Act.  Those portions of the County Ordinance are invalid.


D.  Conclusion

There is no need to certify to the New Mexico Supreme Court the question of whether the County Ordinance is valid.  Although some portions of the County Ordinance conflict with the State Act and other portions are not authorized under the County's exercise of its zoning and general welfare powers, I find that the entire County Ordinance is expressly preempted by the State Act.  Consequently, the County Ordinance is invalid.

IT IS ORDERED that Plaintiff's Motion for Summary Judgment on the Validity of the Timber Ordinance (Doc. No. 29) is granted and Defendants' Cross Motion for Summary Judgement on the Validity of the Timber Harvest Ordinance (Doc. No. 31) is denied.




_____
CHIEF UNITED STATES DISTRICT JUDGE

10